IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2013

**STATE OF TENNESSEE v. DANNY RAY DUNN**

**Appeal from the Criminal Court for Hamilton County**
**No. 281254     Rebecca J. Stern, Judge**

**No. E2012-00677-CCA-R3-CD - Filed March 27, 2013**

Appellant, Danny Ray Dunn, entered guilty pleas without recommended sentences to four counts of vehicular assault, one count of reckless aggravated assault, one count of driving under the influence, one count of driving on a revoked license, and one count of violation of the financial responsibility law.  Following a sentencing hearing, the trial court sentenced him to an effective twenty-year sentence consisting of five consecutive sentences of four years each for the assaultive offenses; eleven months, twenty-nine days for driving under the influence; six months for driving on a revoked license; and thirty days for violation of the financial responsibility law, to be served in the Tennessee Department of Correction. Appellant challenges the length of his sentences, sentence alignment, denial of a suspended sentence, and denial of his motion to withdraw his guilty plea.  Upon our review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

William Maurice Speek (on appeal); Ardena J. Garth, District Public Defender; and David Barrow, Assistant District Public Defender (at trial), Chattanooga, Tennessee, for the appellant, Danny Ray Dunn.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; William H. Cox, III, District Attorney General; and Kate Lavery, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts

Appellant entered guilty pleas to four counts of vehicular assault and one count each of reckless aggravated assault, driving under the influence, driving on a revoked license, and violation of the financial responsibility law, with the agreement that the trial court would determine the appropriate length of sentence, sentence alignment, and manner of service. At the guilty plea hearing, the State made the following offer of proof:

> If the State proceeded to trial, the State would show that in Hamilton County, Tennessee, on or about May 20, 2011, at approximately 11:15 p.m.[,] [Chattanooga Police Department] officer[]s responded to a crash on I-24 west[]bound near the Germantown exit. Witnesses state[d] a vehicle driven by the defendant was traveling at a high rate of speed while all the other traffic was slowing to a stop at a construction area. Some witnesses were slowing with their warning flashers on[,] but the defendant was speeding in one lane then moved suddenly into the middle lane and crashed into the back of a Ford Taurus[,] pushing the Taurus into the back of a semi-tractor trailer. The defendant's car slid forward and to the right after the first crash and hit the Taurus a second time.

> In the Taurus were two adults in the front seat and three children in the back seat. All wore seat belts. The oldest of the children was a female[,] a week away from her [seventeenth] birthday, and two boys were [twelve] and [thirteen] years old. All five people in the Taurus were entrapped. Four were seriously injured, one critically, and one of the five escaped with only needing stitches in his head.

At the March 26, 2012 sentencing hearing, Tammy Lusk, the driver of the vehicle and one of the victims, testified. She explained that on May 20, 2011, they were driving on Interstate 24. Their vehicle had slowed to a near stop, and the next thing she recalled was waking up after the crash. At first, she did not know what had happened. She could not breathe, and her children were shouting in the back seat. There was a terrible smell in the air. She eventually realized that they had been in an automobile wreck. Her ex-husband was in the front passenger seat, and he told her that he could not breathe well. Her son and a friend of his were shouting frantically in the back seat. Ms. Lusk attempted to turn her head slightly to try to calm the boys. She called out for her daughter, but her daughter did not answer. At that time, the paramedics arrived. She asked them to attend to her daughter first. She overheard one of the paramedics say that he thought her daughter had a broken neck.

-2-

Ms. Lusk did not know if her daughter was still alive. She exited the vehicle with assistance from a paramedic. While they cut the doors off her vehicle in an attempt to extricate her daughter, Ms. Lusk traveled to the hospital in an ambulance with her son's friend.

Ms. Lusk stated that she underwent surgery the following morning to place steel rods and plates in her right arm. She also received ten staples in the back of her head. She suffered numerous broken ribs. Ms. Lusk could not go to the bathroom or take a shower by herself for the first few weeks. She missed seven weeks of work and underwent physical therapy for five weeks.

Ms. Lusk testified that her daughter's skull was fractured and her brain started to swell when she was in the hospital. Medical personnel told Ms. Lusk that her daughter was in stable condition but nothing more. Her daughter remained in a drug-induced coma for six days. She then had surgery to repair her broken jaw and two surgeries to repair a broken eye socket. Her daughter experienced double vision and some hearing loss. An ear specialist determined that when the skull fracture healed, it sealed off the ear canal. She underwent an additional surgery to remove scar tissue from the area so that her hearing could be restored. She suffered from a residual palsy on the right side of her face. Her daughter was still under medical supervision at the time of the hearing.

Ms. Lusk recalled that her son's physical injuries were not as severe. He required stitches in the back of his head. He was released from the hospital on the night of the wreck, but he was frightened to get into a vehicle. He asked his grandparents to pray with him before they drove on the interstate because he was afraid someone would hit them again. The situation was emotionally difficult for her son because his entire family and his friend were all still in the hospital.

Ms. Lusk testified that her former husband, Jeffrey Lusk, suffered broken ribs and a collapsed lung. He was hospitalized for four weeks and spent three weeks in the cardiac care unit (CCU). He had to have a tube placed in his lung two different times. He also contracted pneumonia and had blood clots in both lungs. At the time of the hearing, an impending surgery was scheduled for him.

Jeffrey Lusk also testified about his recollection of the wreck. He recalled being stopped in traffic and looking around to see if they could change lanes and exit the interstate. His next memory was waking up after the crash. He heard the boys screaming in the back seat. He called out for his daughter, but she did not respond. His son said, "Dad, Lauren's not awake." He attempted to exit the vehicle to walk around and check on his daughter, but as soon as he stepped out, he realized he could not stand up. He suffered eight broken ribs, a punctured lung, and resulting blood clots. Doctors placed a filter in his lungs to prevent

further clotting, and he was scheduled to have that removed a few weeks after the hearing. His employer would only allow him to take a one-month leave of absence, so he lost his job.

Eric Farmer, the father of the friend who was in the Lusks' car, testified with regard to his son's injuries. He stated that his son was knocked unconscious from the impact and that his left hip was dislocated. He lost a permanent tooth during the impact and suffered an orbital fracture of the left eye socket that had to be repaired surgically. Mr. Farmer noted that his son was in the hospital for three days but received physical therapy for several weeks thereafter. He read a statement to the court detailing his son's injuries, his and his ex-wife's time away from work, and the lasting effects of the wreck.

Appellant testified on his own behalf. He stated that his wife died a couple of months before the car wreck, and he frequently became intoxicated to ease the pain of his loss. He said that it was no excuse for his actions. Appellant recalled the injuries that he suffered in the wreck.

Appellant testified that he served in the Marine Corps during the Vietnam War. He had worked as a postal worker for approximately thirty-two years. He and his wife had been together for thirteen years before she died. He also had three adult daughters, grandchildren, and a great-grandchild. Appellant stated that he asked his uncle, who is a preacher, to constantly pray for the family he injured.

At the close of the evidence, the trial court found as enhancement factors that appellant had a previous history of criminal behavior in addition to those necessary to establish the appropriate range, that the personal injuries inflicted upon or the damage to property sustained by the victim was particularly great (applied to four of the five victims), that appellant previously failed to comply with the conditions of a sentence involving release into the community, that appellant had no hesitation about committing a crime when the risk to human life was high, and that appellant was on probation at the time of the offenses. Tenn. Code Ann. § 40-35-114(1), (6), (8), (10), (13) (2010). The court found as mitigating factors that appellant had been honorably discharged from military service, was grieving over the loss of his wife, and had a steady history of employment. Tenn. Code Ann. § 40-35-113(13) (2010). The trial court sentenced appellant as a Range I offender to the maximum sentence of four years on each of the five felony convictions. The court also sentenced appellant to eleven months, twenty-nine days on the charge of driving under the influence, six months on the charge of driving on a revoked license, and thirty days for violation of the financial responsibility law.

In considering sentence alignment, the trial court found that appellant was an offender whose record of criminal activity was extensive, that he was a dangerous offender whose

behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, and that he was on probation at the time the offenses were committed. Tenn. Code Ann. § 40-35-115(2), (4), (6) (2010). The trial court ordered that the five four-year sentences be served consecutively and the misdemeanor sentences be served concurrently with the first felony sentence, resulting in an effective twenty-year sentence.

The trial court next considered whether to suspend appellant's sentence and place him on probation. In denying a probated sentence, the trial court found that confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct, to avoid depreciating the seriousness of the offense, and to serve as an effective deterrent to others. Tenn. Code Ann. § 40-35-103(1)(A), (B) (2010). It also found that measures less restrictive than confinement had previously been unsuccessful and that the potential for rehabilitation was poor due to appellant's lengthy criminal history. *Id*. § 40-35-103(C).

## II. Analysis

In this appeal, appellant contends that: (1) the trial court erred in applying the enhancement factor that the personal injuries inflicted upon the victim were particularly great; (2) that the trial court erred in applying the enhancement factor that appellant had no hesitation about committing a crime when the risk to human life was high; (3) that the trial court erred in ordering consecutive service of his felony sentences; (4) that the trial court erred in ordering a sentence of full incarceration; and (5) that the trial court erred in denying appellant's motion to withdraw his guilty plea.

### 1. Sentencing Issues

### A. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b) (2010). In addition, "[t]he sentence imposed should be the

least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any

other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

### B. Applicability of Tennessee Code Annotated Section 40-35-114(6), That The Personal Injuries Inflicted upon the Victim Were Particularly Great

Appellant contends that this enhancement factor is inapplicable to convictions for vehicular assault because "serious bodily injury" is an element of vehicular assault.

In *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994), the Tennessee Supreme Court held that the statutory definition of "serious bodily injury necessarily included particularly great injury." *State v. Rhodes*, 917 S.W.2d 708, 714 (Tenn. Crim. App. 1995). The court thus concluded that enhancement factor (6) is an element of an offense requiring serious bodily injury, including vehicular assault. Accordingly, the trial court erred in applying this enhancement factor to the convictions involving the two minors and Mr. Lusk as victims.

However, this court has held that application of enhancement factor (6) to a conviction of vehicular assault is proper based on property damage. *State v. Robbie R. Bailey*, E2001-00210-CCA-R3-CD, 2001 WL 1516956, at *5 (Tenn. Crim. App. Nov. 29, 2001). The presentence report, made a part of the record, states that Ms. Lusk's automobile, valued at $7,000, was totaled. We conclude that this property damage is sufficient to warrant the trial court's application of enhancement factor (6) to the vehicular assault conviction involving Ms. Lusk.

### C. Applicability of Tennessee Code Annotated Section 40-35-114(10), That Appellant Had No Hesitation about Committing a Crime When the Risk to Human Life Was High

Appellant claims that the trial court erred in applying this enhancement factor, asserting that no evidence supported the finding that he had "no" hesitation.

Appellant's argument has been foreclosed by our supreme court. Our *Rhodes* court noted that the supreme court "de-emphasized the reference to 'no hesitation' because it was too subjective." *Rhodes*, 917 S.W.2d at 714 (citing *Jones*, 883 S.W.2d at 602) ("As a practical matter, hesitation or lack of hesitation does not submit readily to proof because of its subjective nature. The more logical interpretation of this enhancement factor places the emphasis on 'risk to human life was high.'")). Placing greater emphasis on that portion of the factor that the "risk to human life was high," we conclude that the trial court properly applied this enhancement factor. Appellant drove through a congested area of construction on a busy interstate in a large metropolitan area while highly intoxicated, endangering the lives of everyone working in the construction zone or driving on the road. The offer of proof made by the State at the guilty plea hearing established that there were multiple witnesses to the crash, indicating the presence of multiple drivers in the vicinity. The trial court did not err in finding this enhancement factor.

As noted above, a trial court's misapplication of an enhancing or mitigating factor in passing sentence will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. Although the trial court erred in applying enhancement factor (6) to three of the four victims in this case, we nonetheless conclude that the sentencing decision was "within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Appellant is not entitled to relief.

### D. Consecutive Sentencing

Appellant claims that the trial court erred in ordering consecutive sentences. We disagree. As grounds for his argument, appellant maintains that his resulting twenty-year sentence is excessive, "stretches beyond what is fair and justly deserved," and "is not reasonably related to the severity of the offense[s] involved." Appellant does not contest the trial court's reliance on Tennessee Code Annotated sections 40-35-115(2) and (6). He only disputes the trial court's failure to find that the "aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity." Tenn. Code Ann. § 40-35-115(4) (2010).

The determination of whether to order consecutive rather than concurrent sentences is a matter primarily within the discretion of the trial court. *See State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). The procedure is governed by Tennessee Code Annotated section 40-35-115, which lists seven factors that are relevant to a trial court's sentencing decision. The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the seven statutory criteria exists. Tenn. Code Ann.§ 40-35-115(b) (2010). Of the seven factors, the trial court found the following

applicable to appellant's case: (1) appellant was an offender whose record of criminal activity was extensive; (2) appellant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high; and (3) appellant was on probation at the time the offenses were committed. Tenn. Code Ann. § 40-35-115(2), (4), (6) (2010).

We first note that the trial court's application of factor (4) may have been improper. Since the supreme court issued the *Bise* and *Caudle* opinions changing the standard of review of sentencing determinations by the trial court to abuse of discretion attributed with a presumption of reasonableness, we question the continued viability of *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), within this context. *See Bise*, 380 S.W.3d at 707; *Caudle*, 388 S.W.3d at 278-79; *see also State v. Jereco Tynes*, No. W2010-02511-CCA-R3-CD, 2013 WL 1043202, at *24 n.7 (Tenn. Crim. App. Mar. 13, 2013). However, absent clear direction from our supreme court, the current state of the law requires that before a trial court may impose consecutive sentences on the basis of being a "dangerous offender," it must make additional findings that "'an extended sentence is necessary to protect the public' and is 'reasonably related to the severity of the offenses committed.'" *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999) (quoting *Wilkerson*, 905 S.W.2d at 939). The *Wilkerson* considerations only apply to the trial court's finding of factor (4) because "of all of the categories for consecutive sentencing, the dangerous offender category is the most subjective and hardest to apply." *Id.* Because the trial court in this case failed to make the requisite *Wilkerson* findings, application of this factor may have been error.

However, the trial court's reliance on the two other factors in support of imposition of consecutive sentences was proper. The trial court properly found that appellant was an offender whose record of criminal activity was extensive. *See* Tenn. Code Ann. § 40-35-115(2) (2010). The presentence report indicated that appellant had been convicted of two prior offenses of driving under the influence. He also had two convictions of domestic violence, three convictions of assault, and one conviction of patronizing prostitution.

Likewise, there is no dispute that appellant was on probation at the time he committed the offenses in the instant case. *See* Tenn. Code Ann. § 40-35-115(6) (2010). Moreover, he was on probation for driving under the influence, which was one of the offenses of which he was convicted in this case. The trial court correctly relied upon this factor in imposing consecutive sentences. Appellant is not entitled to relief.

E. Denial of a Suspended Sentence

Appellant's final claim of error with regard to his sentence is that the trial court improperly denied him any form of alternative sentencing.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a) (2010).[1] An especially mitigated or standard offender convicted of a Class C, D, or E felony is considered to be a favorable candidate for alternative sentencing in absence of evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6) (2010).

In denying any form of alternative sentence in this case, the trial court found that: (1) confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct, specifically charges of driving under the influence and violent offenses; (2) confinement was necessary to avoid depreciating the seriousness of the offense; (3) confinement was particularly suited to provide an effective deterrent to others; and (4) measures less restrictive had been unsuccessful in the past. *Id.* § 40-35-103(1)(A), (B), (C) (2010).

Relying on *State v. Bingham*, 910 S.W.2d 448 (Tenn. Crim. App. 1995), appellant's primary grievance with the trial court's denial of a suspended sentence rests on the lack of evidence supporting a deterrent value in the sentence. Appellant's reliance is misplaced. Our supreme court expressly overruled the proposition that requiring the record to show "that the sentence imposed *will* have a deterrent effect . . . is contrary to the language of the statute" and overruling "*Bingham* . . . or any other case [that] can be read to require proof that incarceration will or should result in deterrence." *See State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000) (emphasis added).

Nonetheless, in *Hooper*, our supreme court emphasized that "the record must contain some proof of the *need* for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." *Id.* at 9 (emphasis added); *see also State v Cynthia Denise Marshall*, No. W2012-01011-CCA-R3-CD, 2013 WL 257050, at *3 (Tenn. Crim. App. Jan. 23, 2013). Accordingly, the court enumerated several factors "to facilitate more meaningful appellate review[ ] and to ensure greater consistency in this aspect of sentencing. . . when deciding whether a need for deterrence is present and whether incarceration is 'particularly suited' to achieve that goal." *Id.* at 10. Among those factors is: "[w]hether the defendant has previously engaged in criminal conduct of the same type as the offense in question . . . ." *Id.* at 12 (noting that "repeated occurrences of the same type

---

[1] Although appellant's aggregate sentence is twenty years, he is still eligible for probation because his individual sentences were four years each. *See State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986) (citing Tenn. Code Ann.§ 40-35-303(a) (2010)); *see also* Tenn. Code Ann.§ 40-35-303(a), Sent. Comm'n Cmts (2010) (noting that where defendant had multiple convictions and the aggregate sentence "exceeded that for probation eligibility, defendant would still be eligible for probation consideration if the individual convictions fell within the probation eligibility criteria").

of criminal conduct by a defendant generally warrant a more emphatic reminder that criminal actions carry consequences").

We reiterate that appellant had two prior convictions for driving under the influence and was, indeed, on probation for driving under the influence when he committed the instant offenses, which included driving under the influence. Moreover, the facts of this case are egregious, and the trial court properly found that confinement was necessary to avoid depreciating the seriousness of the conduct. Several factors support the denial of alternative sentencing in this case. Thus, the trial court did not abuse its discretion in denying appellant a suspended sentence.

## 2. Withdrawal of Guilty Pleas

Appellant claims that the trial court erred in denying his motion to withdraw his guilty pleas. He claims that the pleas were involuntarily and unknowingly entered due to the consumption of "mind-altering medications."

A defendant's right to withdraw a guilty plea is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure:

(1)    Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

(2)    After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

Appellant entered his guilty pleas on January 19, 2012. He was sentenced and the judgments were entered on March 26, 2012, and he filed the motion to withdraw his guilty pleas on April 5, 2012. Because appellant filed the motion to withdraw his guilty pleas "after the sentence [was] imposed but before the judgment[s] [became] final," the more demanding standard, "to correct manifest injustice," applies to our review of this issue. *State v. Crowe*, 168 S.W.3d 731, 741 (Tenn. 2005); *see* Tenn. R. Crim. P. 32(f). "This standard is based 'upon practical considerations important to the proper administration of justice.'" *Crowe*, 168 S.W.3d at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). In analyzing the meaning of "manifest injustice," this court wrote:

Rule 32(f) does not define "manifest injustice," however, courts have identified circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. Withdrawal to correct manifest injustice is warranted

-11-

where: (1) the plea was entered through a misunderstanding as to its effect, or through fear or fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered, and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Virgil*, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008) (internal citations omitted). Appellant bears the burden of establishing that his plea should be withdrawn to correct a manifest injustice. *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

"A defendant does not have a unilateral right to withdraw a plea." *Crowe*, 168 S.W.3d at 740. *See also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (stating that once a defendant enters a guilty plea, he cannot later withdraw it as a matter of right). "[A] defendant's change of heart about pleading guilty or [his] dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." *Crowe*, 168 S.W.3d at 743 (citing *Turner*, 919 S.W.2d at 355). Whether a defendant should be allowed to withdraw his guilty plea is left to the sound discretion of the trial court, regardless of when the motion is filed. *Crowe*, 168 S.W.3d at 740; *Mellon*, 118 S.W.3d at 345-46. An appellate court will not disturb the trial court's ruling unless a clear abuse of discretion is evident on the face of the record. *Crowe*, 168 S.W.3d at 740; *Turner*, 919 S.W.2d at 355. A trial court abuses its discretion if the record fails to contain substantial evidence to support the trial court's conclusion. *Crowe*, 168 S.W.3d at 740; *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995).

The record with regard to appellant's motion to withdraw his guilty pleas is sparse. In his pro se motion, he made the bare allegation that he had taken "mind-altering medications" that prevented him from knowingly entering his pleas. However, we note that appellant remained in custody pending his guilty pleas and sentencing hearing. If, indeed, he took any such medications, they would have been prescribed by the jail physician and distributed through the infirmary or pharmacy. Appellant presented no such evidence in support of his motion. Absent any discernable factual allegation, the trial court summarily denied appellant's motion.

Moreover, we have reviewed the transcript of the guilty plea hearing and determine that appellant exhibited lucidity and responded properly to all inquiries. The record contains no indication that appellant was at all confused or did not understand the questions being asked of him. We also note that appellant did not have counsel file this motion during the two months between his guilty plea and his sentencing hearing. It was not until the trial court

passed an unfavorable sentence that he filed the pro se motion. The unavoidable conclusion is that appellant had hoped for a more lenient sentence. As noted above, "a defendant's change of heart about pleading guilty or [his] dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." *Crowe*, 168 S.W.3d at 743 (citing *Turner*, 919 S.W.2d at 355). The trial court properly denied appellant's motion to withdraw his guilty pleas.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we discern no reversible error and affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE